**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY MINEAR, | CASE NO. 1:10-cv-00901-GBC PC |
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | |
| TAFT FCI, et al., | (Doc. 4) |
| Defendants. | THIRTY-DAY DEADLINE |

**I.   Procedural History**

Plaintiff Sherry Minear is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors. Plaintiff alleges that she is the executor of the estate of her deceased husband, Raymond Minear ("Decedent"). Plaintiff filed this action in the Central District of California on May 6, 2010, alleging civil rights violations against Decedent while he was housed at Taft Federal Correctional Institution ("TFCI") resulting in his death. (Doc. 4.) An order transferring the action to the Eastern District of California was entered on May 11, 2010. (Doc. 2).

**II.   Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

monetary relief against a defendant who is immune from such relief." 28 U.S.C § 1915(e)(2)(B).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S. Ct. at 1949-50; Moss, 572 F.3d at 969.

**III.   Complaint Allegations**

On January 3, 2007, Decedent who was incarcerated at TFCI, visited the medical unit complaining of pain in his hip and difficulty breathing. The physician evaluated him, told him he was over exerting himself and to take aspirin for the pain. (Doc. 4, ¶ 6.) During the following week, Decedent returned to the medical unit complaining of extreme pain that was keeping him up at night and causing him to burst into tears. The physician told Decedent that he would order an x-ray and for Decedent to look for his name on the "call out" sheet. No x-ray was ordered. (Id., ¶ 7.)

On or after January 12, 2007, Decedent returned to the medical unit complaining of trouble

breathing, extreme pain in his hip, and being so tired he was unable to perform his job assignment or exercise.  Decedent told medical staff that he believed something was significantly wrong with him due to the extreme tiredness and pain.  Medical personnel allegedly documented that he was in need of testing due to the change in his daily activities and the serious, chronic pain.  Decedent was advised to take aspirin and watch for his name on the "call out" sheet for an x-ray.  (Id., ¶ 8.)

During the first week of February 2007, Decedent went to the medical unit and complained that he was having difficulty sleeping due to the pain in his hip and frequently being out of breath.  He was unable to exercise and having difficulty performing his job assignment.  Medical personnel took his vital signs, told him to take aspirin for the pain, and advised him to look for his name on the "call out" sheet for lab work.  (Id., ¶ 9.)  During February 2007, Decedent went to the medical unit four additional times.  He was told that his lab work was normal and there was nothing wrong with him.  Medical personnel excused him from work.  No x-rays were taken of Decedent, despite the prior orders.  (Id., ¶ 10.)

During March 2007, Decedent went to the medical unit six times.  Allegedly, the unit officer requested Decedent be examined by medical personnel because he was concerned over Decedent's deteriorating health.  Decedent was diagnosed with a herniated disk and the physician prescribed Benadryl, Ibuprofen and Naproxen, and instructed Decedent to drink lots of water.  No lab work or x-rays were done during this time period.  (Id., ¶ 11.)

During April 2007, Decedent frequently visited the medical unit complaining that he was in significant pain.  His gait became unsteady, with his leg dragging behind him as he walked.  Decedent was given leave from work and physical activity.  An x-ray was taken.  When Decedent returned for results the following week, he was informed the x-ray had been lost and would need to be redone.  Decedent was advised to watch for his name on the "call out" sheet for new x-rays to be taken.  (Id., ¶ 12.)

From May 2007 to October 2007, Decedent visited the medical unit at least eighteen times complaining of the same symptoms.  Additionally, he complained that he had lost weight and changed eating habits, and had chronic pain.  Medical personnel told him that there was nothing seriously wrong with him.  Without performing an examination, medical personnel told Decedent

1    to take Ibuprofen for the pain and he was given leave from work. (Id., ¶ 13.)

2    In November 2007, Decedent's condition worsened. He required a walker to ambulate. He
3    was frequently carried to the "pill line" by other inmates. He went to sick call on November 14,
4    2007. On November 15, 2007, he saw the physician, who told Decedent that there was nothing
5    seriously wrong with him without doing an examination. (Id., ¶ 14.) On November 19, 2007,
6    Decedent began having pain down his leg and in his hands. He complained to medical personnel
7    that the pain was excruciating and he was prescribed Tylenol. Decedent complained that the Tylenol
8    did not touch the pain. He cried nearly every night. He was unable to walk and stopped going to the
9    cafeteria, eating only what other inmates would cook for him. (Id., ¶ 15.)

10   X-rays were taken on November 23, 2007. Decedent complained to the x-ray technician that
11   his pain was so severe at times that he was unable to think, could not sleep, was tired, and had no
12   appetite. The technician told him that he was to see the physician. However, the physician was too
13   busy and cancelled the appointment. (Id., ¶ 16.)

14   On November 26, 2007, Decedent fell down and went to sick call. His right leg was
15   permanently dragging behind him. He was experiencing pain in his left leg and occasional paralysis.
16   He was given Tylenol and told to look for his name on the "call out" list to see the physician. (Id.,
17   ¶ 17.) Decedent saw the physician on November 28, 2007. The physician told Decedent they had
18   again lost his x-rays. The physician ordered "two mattresses for the pain in his hip," new x-rays, and
19   prescribed Tylenol. (Id., ¶ 18.) Decedent had numbness in his hands, paralysis of his right leg, and
20   partial paralysis of his left leg. A reflex analysis showed no reaction in Decedent's right leg and only
21   partial reaction in his left leg, yet no further tests were ordered. (Id.,)

22   On November 29, 2007, when Decedent arrived at the medical unit for x-rays to be taken,
23   he fell down. The nurse in the unit said, "[T]hat's too bad that you can't feel your legs." (Id., ¶ 19.)
24   Medical personnel provided him with a muscle relaxer and prescribed Tylenol 3 to be taken at night.
25   (Id.) On December 3, 2007, Decedent was notified that the x-rays did not develop properly and he
26   would have to wait three weeks to get a new order from the physician. (Id., ¶ 20.) On December 5,
27   2007, Vicodin was prescribed, but it made Decedent sick to his stomach. Decedent was advised that
28   despite his condition he was to be moved back to the dorms. (Id., ¶ 21.)

On December 7, 2007, an MRI was ordered at a local hospital. The MRI showed that Decedent had cancer in his lungs and a lesion on his spine. The physician at the hospital ordered further tests to determine the extent of the cancer. The hospital physician allegedly wondered why the prison physicians took so long to diagnose and order treatment for a clearly serious medical need. Decedent was advised that they would begin treatment immediately, but the Bureau of Prisons controls the scheduling of inmate treatment. (Id., ¶ 22.)

On February 28, 2008, Decedent died as a result of the cancer, which had spread throughout his entire body. According to the complaint, the physicians at the hospital documented that if Decedent had been brought to the hospital and received a meaningful evaluation, his cancer could have been treated, possibly preventing it from spreading. (Id., ¶ 23.)

The complaint alleges that "the [w]arden and [m]edical [p]ersonnel intentionally delayed the treatment of [Decedent] because it would be too costly." (Id., ¶ 24.) Since the prison is operated by a for-profit company under the supervision of the Federal Bureau of Prisons "treatment was delayed to increase the [c]orporations bottom line." (Id.) Plaintiff brings suit against Defendants Warden at TFCI, Chief Medical Officer at TFCI, and the unknown for-profit contractor managing operations at TFCI in their individual and official capacities. Plaintiff is seeking monetary damages, a declaration that the acts described violated Decedent's constitutional rights, and an injunction "ordering the defendants to review and alter their medical treatment procedures and/or have the Western Regional Office of the Bureau of Prisons[] take over the medical facility of [TFCI]." (Id., § VII.)

For the reasons set forth below, the complaint fails to state a cognizable claim for a violation of Decedent's constitutional rights. Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies described by the Court in this order. In the paragraphs that follow, the Court will provide Plaintiff with the legal standards that appear to apply to the claims. Plaintiff should carefully review the standards and amend only those claims that she believes, in good faith, are cognizable.

///

///

## IV. Discussion

### A. Capacity To Bring Suit

Plaintiff's Bivens claim is based upon allegations that Decedent's Eighth Amendment rights were violated by the denial of medical treatment while he was incarcerated at TFCI. (Id., ¶ 29.) The rights protected by the Eighth Amendment are personal rights and only the person subject to the violation has standing to bring suit. See Whitmore v. Arkansas, 495 U.S. 149, 160 (1990). "The general rule is that only the person whose [personal] rights were violated can sue to vindicate those rights." Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 369 (9th Cir. 1998).

Survivors of a deceased individual whose rights were violated before death may bring those personal claims on the decedent's behalf if the relevant state's law authorizes such persons to bring a survival action in state court. See 42 U.S.C. § 1988(a); Smith v. City of Fontana, 818 F.2d 1411, 1416 (9th Cir. 1987) overruled on other grounds by Hodgers-Durgen v. de la Vina, 199 F.3d 1037 (9th Cir. 1999); Moreland, 159 F.3d at 369. California law does permit survival actions, Cal. Code Civ. Proc. § 377.20(a), which "may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest," Cal. Code Civ. Proc. § 377.30. In order to bring a suit as Decedent's personal representative, Plaintiff must execute and file an affidavit or declaration under penalty of perjury and attach a certified copy of the death certificate. Cal. Code Civ. Proc. § 377.32.

Plaintiff's complaint alleges that she is executor of Decedent's estate. (Doc. 4, ¶ 4.) Therefore, while she appears to have capacity to sue as personal representative of his estate, Plaintiff has failed to meet the requirements of California Code of Civil Procedure Section 377.32.

### B. Statute of Limitations

Federal law determines when a claim accrues, and "under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). In the absence of a specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Lukovsky, 535 F.3d at 1048; Jones v. Blanas, 393 F.3d

918, 927 (2004); Fink, 192 F.3d at 914. California's statute of limitations for personal injury actions requires that the claim be filed within 2 years. Cal. Code Civ. Proc. § 335.1: Jones, 393 F.3d at 927.

Decedent died on February 28, 2008, and the complaint was filed on May 6, 2010. It appears that the claim may be barred by the statute of limitations. Plaintiff may address this in her amended complaint.

### C.   Bivens Action

Decedent was a prisoner in federal custody and Plaintiff is seeking relief pursuant to Bivens which recognized a private action where federal officers are alleged to have violated the constitutional rights of citizens. Correctional Services Corporation v. Malesko, 534 U.S. 61, 66 (2001). A Bivens action will not lie against the United States, agencies of the United States, or federal agents in their official capacity. See FDIC v. Meyer, 510 U.S. 471, 486 (1994). Plaintiff's only remedy for an alleged constitutional violation is against the individual official. Correctional Services Corp., 534 U.S. at 72. A private entity, such as Plaintiff attempts to name as a defendant in this action, may not be sued in a Bivens action. Id. at 71.

### D.   Eighth Amendment Medical Care

[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a

substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A difference of opinion between a prisoner and prison medical authorities as to proper treatment does not give rise to a claim. Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). Additionally, a difference of opinion between medical providers regarding treatment does not amount to deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To state a claim under these conditions requires the plaintiff "show that the course of treatment the doctors choose was medically unacceptable under the circumstances, . . . and . . . they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

An allegation by a prisoner that a physician has been merely indifferent or negligent or has committed medical malpractice in diagnosing or treating a medical condition does not state a constitutional claim. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980); Toguchi, 391 F.3d at 1057. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

The facts as alleged are sufficient to potentially state a claim for deliberate indifference to medical needs of Decedent. However, Plaintiff has failed to state facts to demonstrate that any named defendant personally participated in the violation of Decedent's constitutional rights. Jones, 297 F.3d at 934.

### E.     Injunctive Relief

Plaintiff requests an injunction ordering "[D]efendants to review and alter their medical treatment procedures and/or have the Western Regional Office of the Bureau of Prisons[] take over the medical facilities" at TFCI.[1] (Doc. 4, § VII.) The Prison Litigation Reform Act places limitations on injunctive relief. Section 3626(a)(1)(A) provides in relevant part, "[p]rospective relief in any civil

---

[1] There is some question as to whether injunctive relief is appropriate in a Bivens action and courts have decided the issue differently. (See Reuber v. United States, 750 F.2d 1039, 1061 (D.C.Cir. 1984); Stephens v. Herring, 827 F.Supp. 359, 364 (E.D.Va. 1993); Bunn v. Conley, 309 F.3d 1002, 1009(7th Cir. 2002); Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991); Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1228 (10th Cir. 2005).)

8

action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Although Plaintiff alleges that the lack of proper medical care caused Decedent's death, Plaintiff's complaint does not state a cognizable claim arising out of the lack of medical care. In the absence of a viable claim based on the medical care, Plaintiff may not seek an injunction mandating the relief requested. 18 U.S.C. § 3626(a)(1)(A); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3007 (U.S. Jun. 22, 2010) (No. 09-1561). Accordingly, Plaintiff's claim for injunctive relief is not cognizable.

## V.     Conclusion and Order

For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for a violation of Decedent's constitutional rights. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in the amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 129 S. Ct. at 1948-49. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are

waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's complaint, filed May 6, 2010, is dismissed for failure to state a claim upon which relief may be granted under section 1983;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   October 22, 2010

_____
UNITED STATES MAGISTRATE JUDGE